LEIGH M. CLARK, Retired Circuit Judge.
On the trial on an indictment charging appellant with possession of marijuana, a jury found him guilty of the possession thereof for personal use only and fixed his punishment at a fine of one thousand dollars, to which the court imposed additional punishment of twelve months imprisonment in the county jail and sentenced him accordingly.
According to the undisputed evidence, about 4:00 P.M. on July 31, 1979, officers found a plastic bag, containing three smaller plastic bags that contained marijuana, inside the bedroom chest in the front bedroom of the residence of defendant at 608 North Washington Street, Tuscumbia, while they were in the process of searching the house under a search warrant issued by a judge of the District Court of Colbert County.
Appellant insists, as he did in the trial court, that the search was unconstitutional in that the warrant was issued on the basis of an affidavit that was insufficient to show probable cause for believing that marijuana was in the house to be searched. He raised the question by a pretrial motion to suppress the evidence as to the finding of the marijuana. The court conducted a hearing of the motion at which the affidavit and warrant were introduced in evidence and six witnesses testified in person. At the conclusion of the hearing, the court overruled the motion to suppress.
The affidavit was signed and sworn to by officer Randy Jones, a police officer of the city of Florence, on assignment with the North Alabama Drug Unit and was as follows:
“I have received information from a reliable informant who has proved to be reliable in the past and upon whose information I have acted and upon whose information drugs have been found and cases made prior to this date, that there is presently contained in the residence of Gary Dewayne Grisson,[1] 608 North Washington Street, Tuscumbia, Colbert County, Alabama, illegal drugs, to-wit: marijuana. The aforesaid informant stated that he saw the illegal drugs at said residence within the past 48 hours and that the substance at said residence did in fact appear to be marijuana and was in the possession of the said Gary Dewayne Grisson. This information was given to me by the informant within the past 12 hours prior to the making of this affidavit.
“Based upon the above information received from my reliable informant I have probable cause for believing and I do believe that there is contained in the residence of Gary Dewayne Grisson, 608 North Washington Street, Tuscumbia, Colbert County, Alabama, illegal drugs, to-wit: marijuana.
“Upon this information and belief I request that the magistrate to whom this affidavit is directed to make a determina *516 tion if there is sufficient probable cause to issue a search warrant for the person and premises hereinabove described.
“I make this affidavit for the purpose of securing a search warrant to search the said Gary Dewayne Grisson and his residence located at 608 North Washington Street, Tuscumbia, Colbert County, Alabama.”
Appellant is correct in relying upon Davis v. State, 46 Ala.App. 45, 237 So.2d 635, aff’d 286 Ala. 117, 237 So.2d 640 (1970) for the following proposition asserted by appellant:
“In order to show a substantial basis for crediting an informer’s hearsay as a basis for the issuance of a warrant to search for narcotics, the magistrate must be informed of (a) some of the underlying circumstances from which informant concluded that narcotics were where he claimed they were, and (b) some of the circumstances from which the officer concluded that the informant was credible or that his information was reliable.”
However, appellant is incorrect in urging that the affidavit in the instant case is of the same or similar mold as the affidavit held to be insufficient by both appellate courts in Davis. The affidavit in the instant case includes the essential features of such an affidavit stated in both (a) and (b) of appellant’s quoted proposition. Omitted from the affidavit in Davis, but included in the affidavit in the case now on appeal, are (a) the underlying circumstances of the informant’s statement as to the location of marijuana, “that he saw the illegal drugs at said residence within the past 48 hours” and (b) circumstances from which the affiant concluded that the informant was credible as shown by the affidavit that the informant “has proved to be reliable in the past and upon whose information I [affiant] have acted and upon whose information drugs have been found and cases made” prior to the date of the affidavit. As to the specific essentials (a) and (b), we observe marked similarity to, and material difference from, the affidavit held sufficient in Funches v. State, Ala.Cr.App., 318 So.2d 762 (1975). The trial court was not in error in denying defendant’s motion to suppress the evidence.
The only other issue presented by appellant is as to the action of the court in overruling defendant’s motion to exclude the State’s evidence on the asserted ground that there was a “failure of the State to make out a prima facie case against the defendant.” It is significant that this point is addressed to the state of the evidence at the time the State rested and before defendant had called his witnesses, including himself, in defense of the case.
Officer Randy Jones testified that accompanied by other officers he went to 608 North Washington Street, Tuscumbia, to execute the search warrant that he then possessed. Defendant was in the carport, and the search warrant was presented to him at that time. Aided by the “Canine Unit,” Officer Hugh Mills and his dog, the entire residence was searched. Officer Don Harmon found a plastic bag containing three small plastic bags of marijuana in the top drawer of the bedroom chest in the front bedroom. After defendant had been advised and warned as to his constitutional rights in connection with answering any questions asked him, the testimony of Officer Jones shows:
“Q. Now, did you ask any questions to Mr. Grissom at that time?
“A. Yes, sir, I did.
“Q. What did you say?
“A. I asked Mr. Grissom if that bedroom where the marijuana was found was his bedroom, and he relayed to me at that time that it was his bedroom.
“Q. He said it was his bedroom?
“A. Yes, sir.”
The testimony of Officer Mills was largely cumulative of that of Officer Jones. In addition, he testified specifically:
“Q. Do you remember anything about the type of clothing found in the room where the marijuana was found?
“A. Yes, I remember the defendant did make a statement that that was his room.
“Q. You did hear that?
*517 “A. Yes, sir, but as to the fact of the marijuana being his, I did not hear him say that.
“Q. But you did hear him make the statement that was his room?
“A. Yes, sir, I did.
“Q. What I’m asking you, what I just asked you though, do you remember anything about what type clothing was in that bedroom?
“A. Yes, sir, it was male clothing and if you can tell any difference nowadays, it was very evidently a male’s bedroom, and not a female’s, as far as there was no little doilies on the dresser or anything like that.”
Officer Don Harmon testified inter alia:
“MR. HARMON: Well, Mr. Grissom stated that was his bedroom, so I took it for granted that was his clothes in the bedroom.
“MR. HUTCHISON CONTINUES: Are you saying it was men’s clothing?
“A. Yes, sir, it was.
“Q. Did you see any women’s clothing of any kind?
“A. No, sir, I did not.
“Q. And you did hear Mr. — You are telling the Court you did hear Mr. Grissom make the statement that was his bedroom?
“A. Yes, sir, I did.”
At the time defendant presented his motion to exclude the evidence, at the conclusion of the evidence for the State, there was no evidence of any joint occupancy of the house searched.- The evidence was that defendant lived there. There was evidence, by defendant’s own statement, that the bedroom searched was defendant’s bedroom. Defendant was present at the time the officers arrived; and they showed him the search warrant. He was apparently in charge of the premises at the time and responded to their informing him of the search warrant by telling them to go ahead. After the State rested, defendant presented evidence by witnesses who to a great extent at least were joint occupants of the house. Their testimony did present a serious question as to the possibility or the likelihood that the marijuana found in the top dresser drawer of the front bedroom was placed there by the defendant, or on the other hand by some other joint occupant of the house. Appellant does not present any issue as to the sufficiency of the evidence to support the verdict in the case at the time the case was submitted to the jury. For that .reason, we will limit most of our further discussion to the issue raised by appellant as to the sufficiency of the evidence at the time the State rested its case. At that time, the evidence was to the effect that appellant was the sole occupant of the room in which the marijuana was found and there was no evidence that there was any joint occupancy of any part of the house. He was the only person who confronted the officers when they arrived to conduct the search or who talked with them while the search was conducted. According to the testimony of one of the officers, the defendant said after the officers found the marijuana in the top drawer of the bedroom that they would find no more “dope” in the house.
Appellant relies upon a number of cases in which there was evidence of joint occupancy of the premises, in some of which there was joint occupancy of the room in which the controlled substance was found. It has been repeatedly held that the prosecution is required to show more against an accused under circumstances of joint occupancy than when he is the exclusive occupant of premises on which the contraband is found.
“A review of these and numerous other cases convinces this Court that the law in Alabama is clear that where a person is in possession, but not exclusive possession of premises, it may not be inferred that he knew of the presence of any controlled substance found there unless there are other circumstances tending to buttress this inference. 56 A.L.R.3d 948, 957 (1974). See also Mulligan v. State, 513 P.2d 180 (Wyo.1973); Feltes v. People, 178 Colo. 409, 498 P.2d 1128 (1972). This holding is simply a corollary of the presumption of innocence and the rule that *518 to convict a person on circumstantial evidence it is necessary that the evidence exclude all rational conclusions except that of the defendant’s guilt. Campbell v. State, 28 Ala.App. 240, 182 So. 89 (1938); Copeland v. State, 23 Ala.App. 91, 121 So. 445 (1929). While nonexclusive possession may raise the suspicion that all occupants had knowledge of the contraband found, a mere suspicion is not enough. Campbell, supra. What is required is some evidence that connects the defendant with the contraband that is found.” Temple v. State, Ala.Cr.App., 366 So.2d 740, 743 (1979)
In Temple, supra, the controlled substance was found in the freezer compartment of the refrigerator in the kitchen of the house in which defendant, defendant’s wife and her children lived. Defendant was not at home at the time the controlled substance was found by the officers. He testified “that he had no knowledge of the presence of the cocaine; that his kitchen had been recently remodelled and that several workmen had access to the refrigerator.” In holding that the evidence was not sufficient to warrant a submission of the case to the jury, the facts therein were expressly distinguished from those in McHellen v. State, Ala.Cr.App., 351 So.2d 689, 692 (1977), where it is stated:
“We think the evidence sufficiently supported an inference for the jury’s consideration that appellant knew the controlled substance was in his house:
“(a) Appellant was home when the search was made and had lived at such address since 1938.
“(b) Even though appellant testified that he rented one bedroom to a young lady, the heroin was found in the kitchen area, a neutral part of the house.
“(c) The heroin was found underneath a loose piece of linoleum tile in front of the refrigerator, a place which is not easily unnoticed.”
Although presence of the accused at the place where the controlled substance is found is not in and of itself sufficient to show his knowledge of the character and the presence of the controlled substance, it is a circumstance to be considered against him when coupled with the fact that he is in exclusive control of the place at the time the substance is found. In the light of the testimony at the time the motion to exclude the evidence was presented, there existed the possibility that someone other than defendant placed the marijuana in the top drawer of the dresser of his bedroom but there was no evidence that pointed to anyone other than the defendant. The circumstances narrated were sufficient, in the absence of any other evidence on the subject, to present a jury question as to the guilt vel non of defendant. The trial court was not in error in overruling defendant’s motion to exclude the evidence.
Appellant does not present an issue to the effect that at the conclusion of the trial there was not substantial evidence of defendant’s guilt, and we feel it unnecessary to narrate the evidence presented after the motion to exclude the evidence was overruled. We deem it sufficient to state that there was evidence showing that defendant was not the only person who lived at the residence. Also living there were defendant’s father and mother who occupied bedroom three and defendant’s paternal grandfather who occupied bedroom two. For about six months a brother and sister-in-law of defendant lived at the house and at times would sleep in bedroom one. Occasionally another sister-in-law of defendant would come to the house and sleep in the front bedroom (bedroom one) on occasions when defendant was not at home or would sleep on a couch in the living room or den. The evidence was strong to the effect that the bedroom was primarily defendant’s bedroom even though it was used to some extent by some of the others mentioned, either when he was away from home or slept on a couch in another part of the house. The evidence was strong also that the dresser in which the marijuana was found was defendant’s dresser exclusively, except that at times the bottom drawer thereof was used by others for some of their personal belongings. The evidence *519 was extraordinarily strong that the top drawer, the one in which the marijuana was found, was used exclusively by defendant. To the credit of defendant, it should be said that in his testimony, although he denied knowledge of the presence of the marijuana, he did not attempt to charge anyone else with the crime.
We find no error in the record prejudicial to defendant. The judgment of the trial court should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provision of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court. The judgment of the trial court is hereby
AFFIRMED.
All the Judges concur.

. As shown here and otherwise throughout the affidavit the name is spelled with an “n” as the last letter, but in the warrant it is spelled with an “m” as the last letter, as it almost uniformly appears throughout the record.